## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CLAIRE HARLAM,
on behalf of herself and all
others similarly situated,

        Plaintiff,

    v.

BLUE DIAMOND GROWERS,

        Defendant.

Case No. _____

## CLASS ACTION COMPLAINT

Plaintiff Claire Harlam ("Plaintiff") alleges the following against Blue Diamond Growers ("Defendant") upon personal knowledge as to her own transactions and upon information and belief as to all other matters.

## PRELIMINARY STATEMENT

1.      Defendant, a well-known producer of almond products, has deceptively labeled and advertised its varieties of Almond Breeze Almond Milk ("the Almond Milk Products") as "All Natural," when in fact the products contain synthetic and artificial ingredients and chemical preservatives, and are therefore not "All Natural" as that term is commonly understood. Defendant's "All Natural" labeling and advertising of its Almond Milk Products is materially misleading. Defendant's conduct violates New York law, including New York General Business Law § 349, which protects consumers from deceptive acts and practices, as well as New York General Business Law § 350, which protects consumers from false advertising.

1

2.      On behalf of a New York class of Almond Milk Product purchasers, Plaintiff Claire Harlam seeks recompense for the loss she suffered as a result of Defendant's misleading and false labeling, as well as an injunction preventing Defendant from continuing to misleadingly and falsely label the Almond Milk Products.

3.      Plaintiff reviewed the label of the Almond Milk Product she purchased, reasonably relied on its label, and was thereby deceived into purchasing the Almond Milk Product. Plaintiff would not have purchased nor consumed the Almond Milk Product had she known that it was not "All Natural." Nor would she have purchased Defendant's Almond Milk Product had she known that it was misbranded in violation of New York and federal law.

## PARTIES

4.      Plaintiff is a citizen of Brooklyn, New York. She purchased Almond Breeze Shelf Stable Original Unsweetened Almond Milk ("the Purchased Almond Milk Product") roughly once every two months for the past four years. Most recently, Plaintiff purchased two cartons of the Purchased Almond Milk Product from Fresh Direct on January 15, 2015, and had them delivered to her home in Brooklyn, New York.

5.      Defendant Blue Diamond Growers is a California corporation with its principal place of business in Sacramento, California.

6.      Defendant is a leading producer of retail food products, including its Almond Milk Products. Defendant sells its food products to consumers through grocery and other retail stores throughout New York.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d), because this is a class action in which: (1) the matter in controversy exceeds the sum or value of

2

$5,000,000, exclusive of interest and costs; (2) members of the proposed class are citizens of a State different from a defendant; and (3) the number of members of the class is greater than 100.

8.      Because a substantial portion of the wrongdoing alleged herein occurred in New York, the Court has personal jurisdiction over Defendant. Defendant also has sufficient minimum contacts with New York and has otherwise intentionally availed itself of the markets in New York through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (3), because: (1) a substantial part of the events or omissions giving rise to these claims occurred in this District, (2) a substantial part of the property that is the subject of this action is situated in this District, and (3) Defendant are subject to the Court's personal jurisdiction with respect to this action.

## ALMOND BREEZE ALMOND MILK PRODUCTS AT ISSUE

10.     Plaintiff bought the Purchased Almond Milk Product numerous times within the last four years, most recently on January 15, 2014. At the times of purchase, the label of the Purchased Almond Milk Product prominently stated that the product was "All Natural."

11.     Four of the listed ingredients in the Purchased Almond Milk Product are potassium citrate, Vitamin A Palmitate, Vitamin D2, and D-Alpha-Tocopherol. As is explained below, these are artificial and synthetic ingredients and/or chemical preservatives.

12.     The Almond Milk Products listed in paragraph 13 are substantially similar to the Purchased Almond Milk Product. As described herein, each of these products: (i) is the same basic product, an almond milk made by Defendant; (ii) makes the same prominent "All Natural" claim on the front of the label; (iii) contains potassium citrate, Vitamin A Palmitate, Vitamin D2,

3

and D-Alpha-Tocopherol, the same artificial and synthetic ingredients and/or chemical preservatives found in the Purchased Almond Milk Product; and (iv) violates the same food labeling regulations.

13.     Upon information and belief, Defendant sold the following Almond Milk Products during the Class Period. Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that others of Defendant's products had labels that violated the same provisions of New York law, and have the same label misrepresentations as the Purchased Almond Milk Product:

(a) Almond Breeze Shelf Stable Original Almond Milk;
(b) Almond Breeze Shelf Stable Vanilla Almond Milk;
(c) Almond Breeze Shelf Stable Chocolate Almond Milk;
(d) Almond Breeze Shelf Stable Almond Coconut Original;
(e) Almond Breeze Refrigerated Original Almond Milk;
(f) Almond Breeze Refrigerated Vanilla Almond Milk;
(g) Almond Breeze Refrigerated Chocolate Almond Milk;
(h) Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
(i) Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
(j) Almond Breeze Refrigerated Original Almond Milk, 96 ounce container;
(k) Almond Breeze Shelf Stable Original Almond Milk, 11 ounce single serve;
(l) Almond Breeze Original Unsweetened Refrigerated Almond Milk;
(m) Almond Breeze Shelf Stable Original Unsweetened Almond Milk;
(n) Almond Breeze Refrigerated Almond Coconut Original Unsweetened Almond Milk;
(o) Almond Breeze Shelf Stable Almond Coconut Vanilla Unsweetened Almond;
(p) Almond Breeze Vanilla Unsweetened Refrigerated Almond Milk;
(q) Almond Breeze Shelf Stable Chocolate Unsweetened Almond Milk; and
(r) Almond Breeze Shelf Stable Vanilla Unsweetened Almond Milk.

14.     Collectively, the varieties of Almond Breeze Almond Milk listed in Paragraph 13 are referred to herein as the "the Almond Milk Products."

## FACTUAL ALLEGATIONS

15.     Plaintiff bought the Purchased Almond Milk Product within the last four years. At the times of purchase, the front of the Purchased Almond Milk Product carton stated

4

prominently that the product was "ALL NATURAL." An exemplar of the front label is attached as Exhibit 1.

16.     The Almond Milk Products, including the Purchased Almond Milk Product, contain, among other things, potassium citrate, Vitamin A Palmitate, Vitamin D2, and D-Alpha-Tocopherol.

17.     Potassium citrate is an artificial and synthetic ingredient. It is prepared by neutralizing citric acid with potassium hydroxide or potassium carbonate. The citric acid used to make potassium citrate and other food products is manufactured synthetically in a fermentation process that is highly processed. Potassium hydroxide is produced, synthetically, by the electrolysis of potassium chloride solutions. Therefore, potassium citrate is an artificial and synthetic substance.

18.     Vitamin A Palmitate is an artificial and synthetic vitamin. Vitamin A Palmitate is the palmitate ester of retinol. It is prepared by esterifying retinol with palmitic acid.

19.     Vitamin D2 is also an artificial and synthetic vitamin. Vitamin D2 is added to foods in either a crystalline form or a resin form. Crystalline vitamin D2 is produced by ultraviolet irradiation of ergosterol isolated from yeast and related fungi and is purified by crystallization. Vitamin D2 resin is the concentrated form of irradiated Vitamin D2 that is separated from the reacting materials in the Crystalline vitamin D2 process. Whether in its crystalline form or its resin form, Vitamin D2 is artificial and synthetic.

20.     D-Alpha-Tocopherol is also an artificial and synthetic vitamin, as well as a chemical preservative.

21.     A reasonable consumer would understand that a product labeled as "All Natural" would not contain synthetic, artificial, or excessively processed ingredients or chemical

5

preservatives. Accordingly, the Purchased Almond Milk Product is not "All Natural" as that term is commonly understood by a reasonable consumer. Defendant's labeling is misleading in a material way.

22.     The labeling on the Almond Milk Products, including the Purchased Almond Milk Product, misled reasonable consumers into purchasing products with synthetic and artificial ingredients and chemical preservatives that are not "All Natural."

23.     The "All Natural" label is also misleading under the FDA's guidelines. The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic . . . . has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6, 1993. By contrast, where, as here, the term "natural" is used to describe a food containing a synthetic and artificial ingredient, the FDA considers it misleading.

24.     The FDA has sent warning letters relating to the use of a "natural" label when a product contains citric acid, an ingredient contained in potassium citrate. *See, e.g.*, Warning Letter from FDA to Hirzel Canning Co., (Aug. 29, 2001) (chopped tomato products not natural because products contain, among other synthetic ingredients, citric acid), available at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178343.htm; Warning letter from FDA to Richard Classey, Oak Tree Dairy Farm (Aug. 16, 2001) (All Natural Oaktree Real Brewed Ice Tea misbranded because it contains citric acid), available at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm/.

25.     Plaintiff saw the "All Natural" label on the Purchased Almond Milk Product before she purchased it.

26.     Plaintiff did not know, and had no reason to know, that the Purchased Almond

6

Milk Product was not "All Natural," as that term is understood by a reasonable consumer.

27.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

28.    Had Plaintiff known that the Purchased Almond Milk Product contained synthetic and unnatural ingredients and chemical preservatives and was not in fact "All Natural" as that term is commonly understood and as it is understood by a reasonable consumer, she would not have purchased and consumed it.

29.    Defendant's deceptive conduct was directed at consumers at large, and had a broad impact on consumers at large.

30.    Under New York law, food is misbranded if, among other things, its label is false and misleading in any particular. N.Y. Agric. & Mkts. Law § 201(1). The processing, sale, or offer of sale of a misbranded food is prohibited under New York law. N.Y. Agric. & Mkts. Law §§ 199, 199-a. Because they are labeled "All Natural" when it in fact they contain synthetic and artificial ingredients, the Almond Milk Products, including the Purchased Almond Milk Product, are misbranded under New York law.

31.    A reasonable person would attach importance to whether Defendant's products were "misbranded" and to whether they were merchantable, *i.e.*, legally salable, and to Defendant's representations about these issues, in determining whether to purchase the Almond Milk Product at issue.

32.    Plaintiff did not know, and had no reason to know, that the Purchased Almond Milk Product was misbranded. Had Plaintiff known that the Purchased Almond Milk Product was misbranded, she would not have purchased it.

7

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and

23(b)(3).

34.     Plaintiff seeks certification of the following class (the "Class"):

All persons in New York who, at any time since February 19, 2011, purchased an
Almond Breeze Almond Milk Product bearing the label statement "All Natural."

35.     Plaintiff seeks to represent this Class of persons who purchased these deceptively

labeled products in New York.

36.     The following persons are expressly excluded from the Class: (i) Defendant and

its subsidiaries and affiliates, (ii) all persons who make a timely election to be excluded from the

proposed Class, (iii) governmental entities, and (iv) the Court to which this case is assigned and

its staff.

37.     **Numerosity.** The Class comprises thousands or more of consumers throughout

New York. The Class is so numerous that joinder of all members is impracticable.

38.     **Commonality and Predominance.** Common questions of law and fact exist as to

Plaintiff and the Class and predominate over any questions that affect only individual Class

members. These common questions of law and fact include, without limitation:

(a)     Whether the Almond Milk Products are "All Natural";

(b)     Whether a reasonable consumer would construe the terms "All Natural" to
mean the product is free from synthetic additives, unnatural artificial
ingredients, and chemical preservatives;

(c)     Whether Defendant violated New York General Business Law
§ 349 and/or New York General Business Law § 350 by falsely
labeling and advertising its Almond Milk Products as "All
Natural";

(d)     Whether Defendant breached its express and implied warranties;

8

  (e)  Whether Defendant's false and misleading labeling harmed Plaintiff and the Class; and

  (f)  Whether Defendant was unjustly enriched by its deceptive practices.

39. **Typicality.** Plaintiff's claims are typical of the claims of Class members. Plaintiff and the Class sustained damages arising out of Defendant's common course of conduct in violation of law, as described herein. The damages of each Class member were caused directly by Defendant's unlawful and deceptive conduct.

40. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class because they share common injuries as a result of Defendant's conduct that is common to all Class members. Plaintiff has no interests adverse to the interests of absent Class members. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex class action and consumer protection litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

41. **Superiority.** A class action is superior to other methods of fairly and efficiently adjudicating this litigation.  While not inconsequential, the damages as to any individual litigant are such that individual litigation is not feasible. Furthermore, many Class members may not even be aware that they have a claim. Accordingly, for Class members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights.

42. The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications concerning the subject of this action.

43.    Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants, and further the efficient adjudication of Class member claims.

44.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## COUNT ONE

### Violation of New York General Business Law § 349

45.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

46.    As is fully alleged above, throughout the class period, Defendant advertised, marketed, distributed, and sold Almond Milk Products with labels claiming that the products were "All Natural" when in fact they contained synthetic and artificial ingredients and chemical preservatives. These materially misleading claims constitute deceptive acts under New York General Business Law § 349.

47.    Defendant's conduct was consumer oriented, in that it had an impact on consumers of the Almond Milk Products.

48.    A reasonable consumer would be misled by Defendant's defendant act, and Plaintiff was misled by it.

49.    Had Plaintiff and the Class members known that the Almond Milk Products were not in fact "All Natural," they would not have purchased them.

10

50.     By reason of the foregoing, Defendant's conduct constitutes deceptive acts and practices in violation of General Business Law § 349. Therefore, Plaintiff prays for relief as set forth below.

**COUNT TWO**

**Violation of New York General Business Law § 350**

51.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

52.     As is fully alleged above, throughout the class period, Defendant advertised, marketed, distributed, and sold the Almond Milk Products with labels claiming that the products were "All Natural" when in fact they contained synthetic and artificial ingredients and chemical preservatives.  These materially misleading claims constitute false advertising under New York General Business Law § 350-a.

53.     Defendant's conduct was consumer oriented, in that it had an impact on consumers of the Almond Milk Products.

54.     A reasonable consumer would be misled by Defendant's conduct.

55.     Plaintiff and the Class members relied on Defendant's deceptive conduct to their detriment.

56.     Had Plaintiff and the Class members known that the Almond Milk Products were not in fact "All Natural," they would not have purchased them.

57.     By reason of the foregoing, Defendant's conduct constitutes false advertising in violation of General Business Law § 350. Therefore, Plaintiff prays for relief as set forth below.

## COUNT THREE

### Breach of Express Warranty

58.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

59.     Defendant provided Plaintiff and other members of the Class with written express warranties, including warranties that its Almond Milk Products were "All Natural," as set forth above.

60.     Defendant breached these warranties by providing Almond Milk Products to Plaintiff and  members of the Class that contained synthetic ingredients and did not otherwise conform to Defendant's warranties.

61.     These breaches resulted in damages to Plaintiff and other members of the Class who bought Almond Milk Products but did not receive the good as warranted.

62.     As a proximate cause of Defendant's breaches of warranties, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial.

63.     Therefore, Plaintiff prays for relief as set forth below.

## COUNT FOUR

### Breach of Implied Warranty of Merchantability

64.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

65.     Under New York U.C.C. § 2-314(2)(f), "Goods to be merchantable must be at least such as . . . conform to the promises or affirmations of fact made on the container or label if any."

66.     As set forth above, Defendant falsely promised and affirmed on the labels and containers of the Almond Milk Products that they were "All Natural."

67.     Therefore, Plaintiff prays for relief as set forth below.

## COUNT FIVE

### Negligent Misrepresentation

68.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

69.     In making representations of fact to Plaintiff and the other Class members about its Almond Milk Products, Defendant failed to fulfill its duties to disclose the material facts alleged above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

70.     Plaintiff and the other Class members, as a direct and proximate cause of Defendant's breaches of its duties, reasonably relied upon such representations to their detriment. By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial.

71.     Therefore, Plaintiff prays for relief as set forth below.

## COUNT SIX

### Unjust Enrichment

72.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

73.     As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Almond Milk Products.

74.   Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the Class.

75.   Therefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

76.   Plaintiff, individually and on behalf of the Class, prays for judgment and relief against Defendant as follows:

A.   For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.   For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class, including all damages to which Plaintiff and the Class are entitled to under New York law, including General Business Law § 349(h) and General Business Law § 350-e(3), and all other statutory penalties;

C.   For an order requiring Defendant to immediately cease and desist from selling Almond Milk Products in violation of the law; enjoining Defendant from continuing to manufacture, deliver, market, distribute, and sell Almond Milk Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.   For an order awarding attorneys' fees and costs to which Plaintiff and the Class are entitled to under New York law, including General Business Law § 349(h) and General Business Law § 350-e(3);

E.   For an order awarding punitive damages;

F.   For an order awarding pre-judgment and post-judgment interest; and

G.   For an order providing such further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*//*

Dated: February 19, 2015.

Respectfully submitted,

CUNEO GILBERT & LADUCA, LLP


/s/ Taylor Asen

Taylor Asen
(New York Bar Number: 5101738)
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
tasen@cuneolaw.com

Jonathan W. Cuneo
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: 850-837-6020
Facsimile: 850-837-4093
dml@lovelacelaw.com
valerie@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda,
Suite 425
San Jose, CA 95126
Telephone: 408-429-6506
Facsimile: 408-369-0752
pgore@prattattorneys.com

//

15

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: 662-834-2488
Facsimile: 662-834-2628
donbarrettpa@gmail.com

Jay P. Nelkin
NELKIN & NELKIN, P. C.
5417 Chaucer Drive
Houston, TX 77005
Telephone: 713-526-4500
Facsimile: 832-581-2779

Chant Yedalian
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: 877-574-7100
Facsimile: 877.574.9411
chant@chant.mobi

# Exhibit 1

